**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ASO RAHIMZADEGAN, <br><br> *Plaintiff*, <br><br> v. <br><br> JAMES MILLER, *et al.*, <br><br> *Defendants*. | Civil Action No. 25 - 4378 (LLA) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Aso Rahimzadegan, a dual citizen of Iran and Germany, seeks to compel Defendants—Dr. James Miller, in his official capacity as Consul General at the U.S. Consulate in Munich, Alan Meltzer, in his official capacity as the Chargé d'Affaires a.i., U.S. Mission to Germany, and Marco Rubio, in his official capacity as Secretary of State—to adjudicate his nonimmigrant visa application. ECF No. 1. Dr. Rahimzadegan contends that his visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶¶ 35-59. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. For the reasons explained below, the court will grant the motion to dismiss.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Dr. Rahimzadegan's complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, provides that a noncitizen seeking to temporarily visit the United States to teach or study at an American institution through an exchange visitor program may apply for a "J-1" nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(J); *see* 22 C.F.R. § 41.62(a)(1). The U.S. Department of State designates certain entities to sponsor these exchange programs, and an individual must obtain an approved sponsor as a prerequisite to obtaining a J-1 visa. *See* U.S. Citizenship and Immigr. Servs., *Exchange Visitors*.[1] Once a sponsor issues the applicant a Form DS-2019, Certificate of Eligibility for Exchange Visitor Status, the applicant may then apply for a nonimmigrant visa by submitting a Form DS-160. *Id.*; *see* 22 C.F.R. § 41.103. As part of the process, the applicant must undergo an interview with a consular officer. *See* 8 U.S.C. § 1202(h); 22 C.F.R. § 41.102. At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." 22 C.F.R. § 41.121(a). If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may "refuse" the visa pending further administrative processing under Section 221(g) of the INA, which typically consists of additional information gathering. U.S. Dep't of State, *Administrative Processing Information*;[2] *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

In 2025, Dr. Rahimzadegan was hired into a program that included a sponsored Postdoctoral Fellowship at the Massachusetts Institute of Technology ("MIT"). ECF No. 1 ¶ 5; *see* ECF No. 1-4, at 2; *see also* ECF No. 1-7, at 5 (attaching MIT's revised DS-2019 form for Dr. Rahimzadegan). He initiated the J-1 visa application process by submitting his DS-160 Nonimmigrant Visa Application on January 8, 2025, ECF No. 1 ¶ 19, and was interviewed at the

---

[1] *Available at* https://perma.cc/FH25-AD2M.

[2] *Available at* https://perma.cc/7FG4-C6K2.

2

U.S. Consulate General in Munich, Germany on January 17, *id.* ¶ 21. After the interview, his application was placed in "administrative processing" under Section 221(g). *Id.* ¶¶ 22, 24. At that time, Dr. Rahimzadegan was asked to complete a Form DS-5535, Supplemental Questions for Visa Applicants, which he submitted on January 20. *Id.* ¶ 22. Dr. Rahimzadegan subsequently sent multiple follow-up messages both providing additional information and requesting status updates on his application, but the U.S. Consulate General explained that it "does not provide individualized responses to emails requesting status updates." *Id.* ¶ 28-32. At the time Dr. Rahimzadegan filed this action in December 2025—and as of the date of this opinion—the State Department's online portal indicates that his visa application remains "refused for administrative processing." *Id.* ¶ 25; *see* U.S. Dep't of State, *Visa Status Check*.[3] Dr. Rahimzadegan alleges that the delay in the adjudication of his visa since January 2025 has caused him "severe personal, emotional, and financial hardship" and put his fellowship at risk because it will be canceled if he cannot receive his visa. ECF No. 1 ¶¶ 5-6, 49.

In December 2025, Dr. Rahimzadegan filed a complaint seeking to compel Defendants to adjudicate and conclude processing of his visa application. *Id.* ¶ 1. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. The motion is fully briefed. ECF Nos. 4, 6, 7.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[3] *Available at* https://perma.cc/X8HD-TYHH.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III.    DISCUSSION

Defendants raise three challenges in their motion to dismiss: (1) that the doctrine of consular nonreviewability bars consideration of Dr. Rahimzadegan's claims, ECF No. 4, at 9-12; (2) that Dr. Rahimzadegan fails to identify a discrete non-discretionary agency action that Defendants were obligated to, but did not, take, *id.* at 4-9; and (3) that Dr. Rahimzadegan has failed to state a claim for unreasonable delay, *id.* at 12-22. The court considers each argument in turn.

### A.    Consular Nonreviewability

Defendants argue that the court must dismiss under Rule 12(b)(6) based on the doctrine of consular nonreviewability.  ECF No. 4, at 9.[4]  In the context of visa adjudications, "[c]onsular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  However, "a long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision."  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (collecting cases).

In response to this longstanding precedent, Defendants point to the D.C. Circuit's unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), arguing that while there may have previously been "some debate . . . as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate."  ECF No. 4, at 11.  In Defendants' view, *Karimova* conclusively establishes that where a visa application has been refused under Section 221(g) and placed in administrative processing, a final decision has been rendered on the application.  *Id.*; *see Karimova*, 2024 WL 3517852, at *2-3, *6.  The court disagrees.

As an initial matter, the court notes—contrary to Defendants' assertions, ECF No. 4, at 5 n.1; ECF No. 7, at 1-2—that the D.C. Circuit's decision in *Karimova* does not bind it.  The

---

[4] It is well established that the doctrine of consular nonreviewability is not jurisdictional.  *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

D.C. Circuit has twice declined to publish *Karimova*. *See Karimova*, 2024 WL 3517852, at *6; Order at 1, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sep. 10, 2024), Doc. No. 2074062. Under the D.C. Circuit's rules, "[w]hile unpublished dispositions *may* be cited[,] . . . a panel's decision to issue an unpublished disposition means that the panel *sees no precedential value* in that disposition." D.C. Cir. R. 36(e)(2) (emphases added).[5] This court takes the D.C. Circuit at its word and considers, but does not find itself bound by, *Karimova*.

Having considered *Karimova*, the court is not inclined to follow it. The plaintiff in *Karimova* was in a position substantially similar to that of Dr. Rahimzadegan: she had applied for a visa, interviewed at a consular office, had her application "officially 'refused'" under Section 221(g), and then had her application placed in administrative processing. 2024 WL 3517852, at *2 (quoted sources omitted). Relying on various regulations and the Department of State's Foreign Affairs Manual ("FAM"), the D.C. Circuit reasoned that placing an application in administrative processing must be a "final" decision because a relevant regulation instructed that a consular officer "'*must* issue' or 'refuse' the visa" following an interview, *id.* at *1 (quoting 22 C.F.R. § 42.81(a)), and because the FAM directed that, after an interview, "[c]onsular officers 'cannot temporarily refuse, suspend, or hold the visa for future action,'" *id.* (quoting 9 FAM

---

[5] Defendants cite D.C. Circuit Rule 32.1(b)(1)(B) for the proposition that unpublished opinions "may be cited as precedent," ECF No. 4, at 5 n.1 (quoting D.C. Cir. R. 32.1(b)(1)(B)), which is true as far as it goes. But as the D.C. Circuit has explained—in a published opinion that is binding on this court—"[w]hile [unpublished] dispositions have some precedential value, they are 'obviously . . . not of the same precedential value as would be an opinion of this Court treating the question on the merits.'" *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (quoting *Edelman v. Jordan*, 415 U.S. 651, 671 (1974)). Accordingly, unpublished decisions "may be considered persuasive authority, but they do not constrain a panel of the [C]ourt from reaching a contrary conclusion in a published opinion after full consideration of the issue." *Id.* Other than their say-so, ECF No. 4, at 5 n.1; ECF No. 7, at 2, Defendants have pointed to no authority suggesting that this court should take a different approach.

§ 504.1-3(g)).    Drawing on these sources, the D.C. Circuit characterized Ms. Karimova as requesting "yet another 'final decision' on her already-refused visa application," as opposed to a final decision in the first instance.  *Id.* at *6.

This interpretation places too much emphasis on the current language in the FAM—which does not carry the force of law, *see Aramnahad v. Rubio*, No. 24-CV-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025)—and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process, *see Al-Gharawy*, 617 F. Supp. 3d at 16 ("Although the State Department may 'choose[] to *characterize* a section 221(g) notification as a "refusal,"' that magic word is not a get-out-of-review-free card . . . [and] the Court must examine [a plaintiff's] allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim decision [that] is not sufficiently final to warrant the application of the [consular nonreviewability] doctrine.'" (citation omitted) (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020))).  It is impossible to square Defendants' assertion that placement in "administrative processing" was a *final* disposition of Dr. Rahimzadegan's visa application, ECF No. 4, at 6, with the allegations in his complaint.  Dr. Rahimzadegan alleges that, after his interview, he "was informed that [his] visa application was being placed in so-called 'administrative processing,'" ECF No. 1 ¶ 22; he was asked for and provided supplemental information, *id.*; and his status in the online visa portal indicates that his case will "receive another adjudication once [the administrative] processing is complete," *id.* ¶ 25 (quoting ECF No. 1-6).[6]

---

[6] The court's conclusion that placement in administrative processing under Section 221(g) is not a final determination is underscored by language on the Department of State's website, of which the court takes judicial notice.  *See Arab*, 600 F. Supp. 3d at 63 n.1.  The website explains that an application is placed in administrative processing when "[t]he consular officer could not conclude

(*continued on next page*)

Accepting these allegations as true and drawing all inferences in Dr. Rahimzadegan's favor—as this court must, *see Iqbal*, 556 U.S. at 678—Dr. Rahimzadegan has sufficiently alleged that he has not yet received a final decision on his visa application, *see Aramnahad*, 2025 WL 973483, at *8; *cf. Ibrahim v. Spera*, No. 23-CV-3563, 2024 WL 4103702, at *3 n.2 (D.D.C. Sep. 6, 2024) (noting "that it is extremely difficult to square [*Karimova*'s] analysis, which is based largely on agency regulations, with the communications that visa applicants actually receive from various consulates").

Dr. Rahimzadegan does not challenge a final decision denying his visa application, nor does he contend that this court should order the State Department to grant his application. *See generally* ECF No. 1.  Rather, he argues only that Defendants must "conclude processing of [his] visa application within a reasonable time."  *Id*. ¶ 50.  Several courts in this district have found, even after *Karimova*, that "the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance."  *de Belinay v. Mayorkas*, No. 24-CV-240, 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025) (quoting *Shabestary v. Sanders*, No. 24-CV-362, 2024 WL 5118229,

---

[a person] w[as] elegible [sic] for the visa sought and additional administrative processing of [the] application is required."  U.S. Dep't of State, *INA Section 221(g) – Incomplete Application or Supporting Documentation*, https://perma.cc/3S7VMSH9.  It further elaborates that a person who is placed in administrative processing "will be given a letter stating this" and "the embassy or consulate will contact [him] when the administrative processing is complete."  *Id.*  An inability to "conclude" whether a person is eligible for a visa is plainly different from a conclusive determination that a person is ineligible for a visa, and the instruction for the applicant to wait for the embassy or consulate to contact him after administrative processing is complete supports the court's conclusion that an applicant in this position is still awaiting a final decision on his application.  *But see* U.S. Dep't of State, *Administrative Processing Information*, https://perma.cc/7FG4-C6K2 ("When an applicant is refused under 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview.  It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible.").

8

at *3 (D.D.C. Dec. 16, 2024)); *see, e.g.*, *Dib v. Shea*, No. 25-CV-4167, 2026 WL 1578859, at *3-4 (D.D.C. June 2, 2026); *Sluev v. Rubio*, No. 25-CV-899, 2026 WL 507894, at *2 (D.D.C. Feb. 24, 2026); *Tehran v. Rubio*, No. 25-CV-1584, 2025 WL 3551629, at *3-4 (D.D.C. Dec. 11, 2025); *Saraev v. Rubio*, No. 25-CV-1740, 2025 WL 3458777, at *3 (D.D.C. Dec. 2, 2025); *Thein v. Trump*, No. 25-CV-2369, 2025 WL 2418402, at *7-10 (D.D.C. Aug. 21, 2025); *Shushkov v. Rubio*, No. 24-CV-2265, 2025 WL 2389939, at *4 (D.D.C. Aug. 18, 2025); *Diabin v. Rubio*, No. 24-CV-3374, 2025 WL 1824841, at *3 (D.D.C. July 2, 2025); *Aramnahad*, 2025 WL 973483, at *10; *Mahmoodi v. Altman-Winans*, No. 24-CV-2010, 2025 WL 763754, at *4-6 (D.D.C. Mar. 11, 2025). *But see Rahman v. Bouldin*, No. 25-CV-1836, 2025 WL 3248585, at *3 (D.D.C. Nov. 21, 2025) (holding that the consular nonreviewability doctrine bars review of visa applications placed in administrative processing); *Rezvani v. Rubio*, No. 24-CV-3381, 2025 WL 1293358, at *2 (D.D.C. May 5, 2025) (noting that "the consular non-reviewability doctrine would likely apply" but dismissing the case for failure to sufficiently allege a non-discretionary duty); *Datta v. Rubio*, No. 24-CV-2937, 2025 WL 752643, at *5 (D.D.C. Mar. 10, 2025) (noting that *Karimova* "casts doubt" on earlier cases holding that the consular nonreviewability doctrine does not apply).

This court follows the majority approach and determines that Dr. Rahimzadegan's action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered.  Accordingly, his case is not barred by the doctrine of consular nonreviewability.

### B.      Non-Discretionary Duty

Defendants also contend that Dr. Rahimzadegan has failed to allege that "the government agency or official is violating a clear duty to act"—a threshold requirement for a mandamus claim

and a merits question for a claim of unreasonable delay under the APA.  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* ECF No. 4, at 4.[7]   Defendants argue that Dr. Rahimzadegan "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action" on his visa application "now that it has been refused under INA Section 221(g)" and placed in administrative processing.  ECF No. 4, at 4.  As support for this proposition, Defendants again point to *Karimova*, which they argue is "dispositive" in cases like this one, where plaintiffs "seek to compel State Department officials to act further on a visa application refused under INA Section 221(g) and undergoing post-refusal administrative processing."  *Id.* at 5.

In *Karimova*, the D.C. Circuit held that the plaintiff had "not identified an adequate legal basis" for her action seeking to "compel[] the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application."  2024 WL 3517852, at *6.  The Court characterized Ms. Karimova as "argu[ing] that Section 555(b) [of the APA]— and *only* Section 555(b)—'places a clear, non-discretionary duty' on her consular officer to re-adjudicate her already-refused application."  *Id.* at *3.  The Court easily determined that "Section 555(b) does no such thing" and instead "simply expresses 'a congressional view that agencies should act within reasonable time frames.'"  *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n* ("*TRAC*"), 750 F.2d 70, 77 (D.C. Cir. 1984)).

---

[7] While Defendants seek dismissal only under Rule 12(b)(6), ECF No. 4, at 3-4, their argument about non-discretionary duty under the Mandamus Act is jurisdictional.  *Am. Hosp. Ass'n*, 812 F.3d at 189.  Mindful of its obligation to consider jurisdiction sua sponte, the court will consider Defendants' argument about the Mandamus Act under the Rule 12(b)(1) standard.  *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

The problem for Defendants is that this rationale is wholly inapplicable given this court's understanding of the visa process. *See supra* Section III.A.  It may well be true that Section 555(b) does not create a duty to *re*-adjudicate a final decision after one has already been made, but, as this court sees it, that is not what plaintiffs like Dr. Rahimzadegan (or Ms. Karimova) are seeking. Instead, they are seeking an initial, final determination on their visa applications.  In this way, any discussion of how Section 555(b) applies to requests to re-adjudicate final visa decisions means very little for a plaintiff who seeks an initial final decision and wishes for it to be made "within [a] reasonable time frame[]" as Section 555(b) requires.  *TRAC*, 750 F.2d at 77.

Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining that "both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Sharov v. Rubio*, No. 25-CV-1930, 2026 WL 759476, at *4 (D.D.C. Mar. 18, 2026) (quoting *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024)); *see, e.g.*, *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *Tehran*, 2025 WL 3551629, at *4-5; *Saraev*, 2025 WL 3458777, at *3; *Fetanat v. Rubio*, No. 24-CV-2298, 2025 WL 2643487, at *3-4 (D.D.C. Sep. 15, 2025); *Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 85 (D.D.C. 2025); *Thein*, 2025 WL 2418402, at *11; *Diabin*, 2025 WL 1824841, at *3-4; *Vulupala*, 438 F. Supp. 3d at 100.  To be sure, this view is not universally held.  *See Alnaddaf v. Rubio*, No. 25-CV-2491, 2026 WL 555314, at *13 (D.D.C. Feb. 27, 2026) (concluding that the plaintiffs failed to allege a non-discretionary duty to take further action on visa applications that had been placed in administrative processing); *see also, e.g.*, *Lorkalantari v. U.S. Dep't of State*, No. 25-CV-1947, 2026 WL 1707622, at *4-5 (D.D.C. June 12, 2026); *Rudd v. United States*, No. 25-CV-2646, 2026 WL 946112, at *3-5 (D.D.C. Apr. 8, 2026); *Jahani v. Rubio*, No. 25-CV-989, 2025 WL 3653542, at *3-4 (D.D.C. Dec. 17, 2025); *Baradaran v. Rubio*,

No. 24-CV-2946, 2025 WL 2506546, at *2-4 (D.D.C. Sep. 2, 2025); *Pour v. Rubio*, No. 25-CV-573, 2025 WL 2374559, at *4-7 (D.D.C. Aug. 14, 2025); *Seifan v. Sweeney*, No. 25-CV-261, 2025 WL 2171093, at *4-5 (D.D.C. July 31, 2025); *Javaid v. Armstrong*, No. 24-CV-2716, 2025 WL 2144100, at *2-3 (D.D.C. July 29, 2025); *Pasiukevich v. Lawton*, No. 24-CV-3349, 2025 WL 2023207, at *3-4 (D.D.C. July 17, 2025); *Ibrahim*, 2024 WL 4103702, at *3.

This court continues to adhere to the view that consular officials have a non-discretionary duty to fully adjudicate a visa application. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").

But even if the court read *Karimova* with the D.C. Circuit's understanding that Section 221(g) refusals are final, it would still deny Defendants' motion to dismiss. That is because—even taking the argument on the D.C. Circuit's own terms—the Court did not rule that *no* source of law creates a non-discretionary duty to re-adjudicate a visa application, just that "Section 555(b)—and *only* Section 555(b) . . . does no such thing." 2024 WL 3517852, at *3. Setting Section 555(b) aside, Dr. Rahimzadegan has cited additional sources of law that he contends establish a non-discretionary duty to adjudicate his visa application. ECF No. 1 ¶¶ 38-39, 44 (citing 8 U.S.C. § 1202(d) and 22 C.F.R. § 41.121); ECF No. 6, at 17 (citing 8 U.S.C. § 1202(d)). At this early stage of litigation, that is sufficient.

### C. Unreasonable Delay

On the merits, Defendants argue that Dr. Rahimzadegan has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 4, at 12-22; ECF No. 7, at 7-17. Dr. Rahimzadegan's claims under the APA and the Mandamus Act share the same standards for obtaining relief. *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79). Unreasonable delay is analyzed using six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023). Weighing the *TRAC* factors here,

the court concludes that Dr. Rahimzadegan has failed to plausibly allege a claim for unreasonable delay.[8]

The first two factors—requiring agencies to follow "a rule of reason" that justifies their timeline and consider any congressionally imposed timelines—are typically analyzed together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  In essence, these two factors require the court to evaluate "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay.'"  *Rashidian*, 2024 WL 1076810, at *6 (alterations in original) (quoting *Khazaei*, 2023 WL 6065095, at *6).  In analyzing these factors, the court may consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Da Costa,* 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102).  Both factors favor Defendants.

Dr. Rahimzadegan cites to the INA, which provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b); *see* ECF No. 1 ¶ 46.  But this guidance is not binding, and therefore it cannot be considered to set forth a congressionally imposed deadline.  *See Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement").  Dr. Rahimzadegan also argues that Section 555(b) imposes some time limit on the

---

[8] Dr. Rahimzadegan suggests that application of the *TRAC* factors is premature at the motion-to-dismiss stage.  ECF No. 6, at 25-26.  The court is unpersuaded, as it is the majority view in this Circuit that "[w]here a plaintiff's complaint supplies sufficient factual allegations to evaluate the *TRAC* factors," a court may evaluate "whether the facts alleged are sufficient to state a plausible claim for unreasonable administrative delay."  *Sereshti v. Gaudiosi*, No. 24-CV-1288, 2024 WL 4625802, at *7 (D.D.C. Oct. 30, 2024).  Indeed, courts routinely consider the *TRAC* factors when considering a motion to dismiss.  *See, e.g.*, *Da Costa*, 80 F.4th at 346 (affirming dismissal of a plaintiff's unreasonable-delay claim); *Tehran*, 2025 WL 3551629, at *5 (collecting cases).  The court will do the same here.

adjudication of a visa application and that consular officers must render a final adjudication within a reasonable time. ECF No. 6, at 29-30. Although he is correct that Section 555(b) requires agencies to conclude matters "within a reasonable time," that subsection does not supply any "timetable" governing an agency's response time. *Id.* at 26.

Dr. Rahimzadegan next argues that Defendants "fail to offer any evidence to suggest that the untimely adjudication of [his] application follows a 'rule of reason.'" *Id.* at 27-28. But Congress "has given the agencies wide discretion in the area of immigration processing," *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017)), and "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" as to what is reasonable, *id.* at *6. While "[n]o bright lines have been drawn in this context . . . '[d]istrict courts have generally found that immigration delays . . . between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (third alteration in original) (quoting *Sarlak*, 2020 WL 3082018, at *6). "Courts calculate delays in visa processing using the period between the last government action and the issuance of the opinion." *Asadi v. U.S. Dep't of State*, No. 23-CV-1953, 2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024) (internal quotation marks and alteration omitted). Less than eighteen months will have passed between Dr. Rahimzadegan's visa interview in January 2025 and the issuance of this opinion. ECF No. 1 ¶ 21. Although such a timeline is undoubtedly frustrating, the court is satisfied that Defendants use a rule of reason that does not constitute unreasonable delay. *See, e.g.*, *Da Costa*, 80 F.4th at 342 (holding that a four-and-a-half-year delay was not unreasonable); *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (holding that a fifteen-month delay was not unreasonable); *Varghese v. Blinken*, No. 21-CV-2597, 2022

15

WL 3016741, at *5 (D.D.C. July 29, 2022) (explaining that a four-year delay "would not warrant judicial intervention, standing alone").

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is particularly important in the visa context and also favors Defendants. *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). The D.C. Circuit has "refused to grant relief . . . where 'a judicial order putting [the plaintiff] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (third, fourth, and fifth alterations in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Such would be the case here, where moving Dr. Rahimzadegan to the front of the visa-adjudication queue would merely reorder all applicants with no change in the overall timeline.

Dr. Rahimzadegan alleges that Defendants have not established the existence of a queue or any "priority that would be periled" by granting him relief. ECF No. 6, at 31. "Th[ese] assertion[s], however, do[] not grapple with the fact that Plaintiff['s] request here boils down to a request that [he] 'should be prioritized for processing ahead of others.'" *Augustin v. Blinken*, No. 23-CV-76, 2023 WL 4547993, at *6 (D.D.C. July 14, 2023) (quoting *Milligan v. Blinken*, No. 20-CV-2631, 2021 WL 3931880, at *9 (D.D.C. Sep. 2, 2021)).

To be sure, the delay that Dr. Rahimzadegan faces is problematic. But compelling Defendants to process his application offers only an individualized solution to a systemic problem and "would presumably delay other adjudications." *Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka*, 246 F. Supp. 3d at 154). Additionally, "deference must be given to the State Department's priority-setting and resource-allocation decisions" in the visa-adjudication context. *Arab*, 600 F. Supp. 3d at 71. It would be improper for the court to

16

intervene and expedite Dr. Rahimzadegan's visa application at the expense of others. The fourth factor thus weighs heavily in favor of Defendants.

The third and fifth *TRAC* factors concern the impacts of the delay on Dr. Rahimzadegan. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). These factors weigh slightly in Dr. Rahimzadegan's favor. Dr. Rahimzadegan has alleged severe emotional, professional, financial, and mental harm as a result of Defendants' delay, including the potential loss of his fellowship. ECF No. 1 ¶¶ 4-9; *see* ECF No. 6, at 14-15. These harms are unfortunate. However, without more facts suggesting otherwise, these harms do not threaten Dr. Rahimzadegan's physical health and well-being in a manner compelling enough to overcome Defendants' advantage on the more important factors. *See Da Costa*, 80 F.4th at 345 (concluding that the third and fifth *TRAC* factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter"); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *6-7 (D.D.C. Feb. 12, 2024) (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay).

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh*, 630 F. Supp. 3d at 164. Dr. Rahimzadegan does not allege that Defendants have acted in bad faith in causing the delay in the adjudication of his visa. ECF No. 6, at 34. Thus, "the good faith of the agency in addressing the delay weighs against equitable relief." *Sawahreh*, 630 F. Supp. 3d at 164.

*     *     *

17

As the D.C. Circuit explained in *Da Costa*, delays in visa adjudications are "troubling." 80 F.4th at 344. The costs of this delay have surely been difficult for Dr. Rahimzadegan. But after weighing the *TRAC* factors, the court concludes that Dr. Rahimzadegan fails to state a plausible claim for unreasonable delay under the APA or the Mandamus Act. "The most important factors— those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss, and factors three and five are not strong enough to justify the opposite conclusion." *Meyou v. U.S. Dep't of State*, No. 21-CV-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022). Accordingly, the court will dismiss the complaint under Rule 12(b)(6).

## IV.    CONCLUSION

For the foregoing reasons, the court will grant Defendants' Motion to Dismiss. ECF No. 4. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:    July 31, 2026

18